CRAIN, J.
|2The defendant, Deborah Stokes, was charged by bill of information with theft of five hundred dollars 'or more, a violation of Louisiana Revised Statute 14:67(B)(1) (pri- or to its amendment by 2014 La. Acts No. 255, § 1 and 2010 La. Acts No. 585, § 1). The defendant waived her right to a trial by jury and was found guilty as charged after a bench trial. The trial court denied the defendant’s motion for new trial and sentenced the defendant to four years imprisonment at hard labor, then later denied a motion to reconsider the sentence. On appeal, the defendant contends that the trial court erred by admitting an affidavit into evidence and by denying the motion for new trial and the motion to reconsider the sentence. The defendant also asserts that her sentence is unconstitutionally excessive. We affirm the conviction and sentence.
FACTS
In June of 2008, the defendant was hired to be the in-home caregiver of Jean Math-erne (the victim), a 91-year-old woman in declining mental and physical health. The defendant’s responsibilities included cooking and-cleaning for the victim, assisting her with her daily medications, and taking her to appointments. The defendant was initially hired to work six hours per day, seven days a week, and was paid $11.00 per hour, totaling $462.00 per week.
In August of 2008, family members of the victim decided to place her in an assisted living facility, which would be better equipped and staffed to care for her. The defendant was advised by the family that her employment may be terminated. The son-in-law of the victim described her as “anxious to move”' out of her house; however, within weeks of moving into the assisted living facility, the victim abruptly left and returned home in the care of the *422 defendant. The victim contacted her daughter and accused her and her son-in-law of trying to steal her money. She then revoked the power of attorney previously granted to them; and, according to lathe defendant, gave a power of attorney to the defendant, made the defendant the sole beneficiary of her will, and gave the defendant an annuity for $150,000.00.
Approximately one year later, while the victim was making a deposit at American Gateway Bank, she expressed concern to a bank employee about her account balance. An unusually large withdrawal from the account prompted the bank manager at the time, Renea Riley, to further investigate the use of the account. The review identified numerous checks that were cashed by the defendant as well as transfers from the victim’s account to an account in the name of a business, Jeremiah Sitter Services, previously incorporated by the defendant. The transactions were considered questionable due to their amounts and frequency.
Riley requested a meeting with the victim to discuss the matter. Although not invited, the defendant also attended the meeting. The victim had no recollection of the questionable transactions, but the defendant offered various explanations, including the claim of providing overnight care for the victim. During the meeting, the defendant left the bank, returned with a cashier’s check for $10,000.00, and gave the funds to the victim.
Riley reported the matter to the East Baton Rouge Parish Sheriffs Office and the case was assigned to Detective Daniel Luckett of the Sheriffs Financial Crimes Division. Detective Luckett interviewed the victim and, after reviewing the account information, identified numerous discrepancies between the ledger maintained by the victim and the checks actually transacted on the account. Checks that were originally made payable to companies such as Cox Communications or Entergy had been altered to be payable to the defendant or Jeremiah Sitter Services in significantly greater amounts. The victim could not recall any of the altered checks. Detective Luckett estimated that the total amount of the theft from the account was $84,000.00. The defendant was arrested shortly thereafter.
I ¿ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
In a combined argument for the first two assignments of error, the defendant argues that the trial court erred in admitting an affidavit as a business record in violation of the Confrontation Clause. The affidavit, captioned “AFFIDAVIT OF FORGERY,” was executed by the victim at the request of American Gateway Bank and includes a statement from the victim that the defendant “may have stolen” the victim’s checks. The bank manager testified that such affidavits are routinely executed when a customer claims that transactions were unauthorized. Because the victim did not testify at trial, the defendant objected to the affidavit as a violation of her right to confrontation, citing Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The trial court overruled the objection.
On appeal the defendant contends that the affidavit was the sole evidence of misappropriation. Noting that the victim did not testify and was not subject to cross-examination, the defendant contends that the evidence was testimonial in nature and that there was no direct testimony that any checks were written by the defendant without the victim’s authorization. She contends that the victim should not be considered an unavailable witness and that the State could have made arrangements *423 for her to be present to testify. The defendant further argues that the affidavit is inadmissible hearsay and does not fall within the “business record” exception.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. State v. Dressner, 08-1866 (La.7/6/10), 45 So.3d 127, 137. The. Confrontation Clause of the • Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the wit-nessés against him....” Out-of-court | {¡statements that are testimonial are barred under the Confrontation Clause, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witnesses. Crawford, 541 U.S. at 53-54, 124 S.Ct. at 1365-66. In the context of a police interrogation, statements are testimonial when the circumstances objectively indicate there is no ongoing emergency and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).'
Hearsay is an unsworn, out-of-court statement made by a person other than the testifying witness that is offered to prove the truth of the matter asserted. See La.Code of Evid. art. 801. Hearsay statements are inadmissible unless they fall within one of the recognized exceptions to the hearsay rule. See La.Code of Evid. art. 802. Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status, subject to the requirements of Louisiana Code of Evidence article 803(6). Questions regarding the admissibility of evidence are within the discretion of the trial court and should not be disturbed absent a clear abuse of that discretion. See State v. Mosby, 595 So.2d 1135, 1139 (La.1992).
Confrontation errors are subject to the harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); State v. Burbank, 02-1407 (La.4/23/04), 872 So.2d 1049, 1051 (per curiam). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination was fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or | (¡contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution’s case. Van Arsdall, 475 U.S. at 684, 106 S.Ct at 1438; State v. Wille, 559 So.2d 1321, 1332 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, 817, cert. denied, 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000).
Similarly, when a héarsay statement is improperly introduced into evidence, it will be considered harmless error if it is found to be cumulative and corroborative of other properly admitted evidence and did not contribute to the verdict. State v. Hilton, 99-1239 (La.App. 1 Cir. *424 3/31/00), 764 So.2d 1027, 1035, writ denied, 00-0958 (La.3/9/01), 786 So.2d 113.
Although the defendant persuasively argues that the admission of the victim’s affidavit violated both the Confrontation Clause and the hearsay rule, we pretermit consideration of the merits of those arguments, because we find that the admission of the affidavit, even if improper, was harmless error.
The evidence presented at trial compels a finding that the guilty verdict is surely unattributable to the error, if any, of allowing the affidavit into evidence. The ledger used by the victim to record checks written on her account is replete with notations that varied in the amount and payee from the actual checks that were cashed, all of which resulted in significant sums being distributed to the defendant or her company. The ledger entry for one check indicates that it was payable to “Cox Communications” for $52.69; however, the check that was cashed was payable to “Jeremiah Sitter” for' $2000.00. Similarly, check number 5118 was noted in the ledger as being payable to “Cox” for $52.69 but was cashed as 17payable to “Jeremiah Sitter Service” for $2,700.00. Another check is noted in the ledger as payable to the defendant for $512.00 but was apparently altered and cashed for the amount of $2,500.00. These examples are illustrative of many such discrepancies; and, as previously noted, Detective Luckett estimated that the total amount of the theft from the American Gateway Bank checking account was $84,000.00. In addition to Detective Luckett identifying these discrepancies, another witness, Patsy Loupe, testified that she and the victim met to review her account information,, and they likewise confirmed the discrepancies between the ledger and the checks. .
The defendant testified at both the preliminary hearing and the trial. According to the preliminary hearing transcript, which was admitted into evidence during the trial, the defendant attempted to characterize many of the checks as simply reflecting her agreed upon compensation, which she said increased after she moved in with the victim. However, the defendant, who stated that her starting compensation was only $600.00 per week, had difficulty identifying the rate of her increased compensation, initially testifying that, she was being paid $5,000.00 a month and later stating that she was earning $10,000.00 per month.
The ledger maintained by the victim does not reflect any such increáse in pay to the defendant. Further, there was testimony from multiple witnesses indicating that the defendant never moved in with the victim. The victim’s next door neighbor testified, that the defendant’s vehicle was not at the victim’s residence in the morning or in-the evening. Another witness, who spoke to the defendant on a weekly basis during the period in question, recalled the defendant telling her. on several occasions that she made dinner for the victim before she left each day, and that on two occasions, when the defendant was babysitting in the area of the victim’s residence, she asked for permission from the victim to sleep at the victim’s house.
|sWhen the discrepancies were first brought to the attention of the victim in the presence of the defendant at American Gateway Bank, the defendant, after being accused of forging checks, left' the bank and returned with a cashier’s check for $10,000.00 that she gave to the victim. The defendant conceded that fact; however, she claimed that she gave the funds to the victim at her request, because the victim wanted to terminate the investigation and promised to return the money to the defendant.
*425 The evidence presented by the State outside of the affidavit, - particularly the altered checks made payable to the defendant or her company, overwhelmingly support the determination by the jury that the defendant was guilty of theft of five hundred dollars or more. Therefore, we conclude that the guilty verdict rendered in this particular trial is surely unattributable to the error, if any, in admitting the affidavit. Therefore, assignments of error numbers one and two lack merit.
ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR
In a combined argument for the third and fourth assignments of error, the defendant argues that the trial court abused its discretion in imposing an excessive sentence and erred in denying the motion to reconsider the sentence. The defendant notes that despite her status as a fifty-six-year-old with no prior criminal record, the trial court did not consider the alternative of suspending the sentence with probation. The defendant further notes that the instant offense is non-violent. The defendant argues.that the trial court based its decision to not suspend the sentence solely on the fact that she was indigent 'and unable to pay full restitution.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant’s constitutional, right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is constitutionally excessive if it is grossly disproportionate to the |9severity of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. See State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962. A sentence is grossly dispro-' portionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288, 291 (La.1985). The sentence imposed will not be set aside .absent a showing of manifest abuse of the trial court’s-wide discretion to sentence within statutory limits. State v. Lobato, 603 So.2d 739, 751 (La.1992).
The Louisiana Code of Criminal Procedure sets forth items that must be considered by thé trial court before imposing sentence. L'a.Code Crim. Pro. art. 894.1. The trial court need hot recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the guidelines. State v. Herrin, 562 So.2d 1, 11 (La.App. 1 Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the .circumstances of the crime and the trial' court’s stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La.App. 1 Cir.1988). Remand for full compliance with Article 894.1 is unnecessary when a sufficient factual basis for the sentence is shown. See State v. Lanclos, 419 So.2d 475, 478 (La.1982).
Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall.be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both. La. R.S. 14:67(B)(1) (prior to amendment by 2014 La. Acts No. 255, § 1 and 2010 La. Acts No. 585, § 1). Thus, the four-year sentence imposed in this case is well within the range for the offense.
At the sentencing hearing, the victim impact statements of-the daughter and *426 son-in-law of the victim were presented. They each presented lengthy accounts as |10to how the defendant took advantage of the victim’s mental state and manipulated the victim, and the effect that the actions of the defendant had on the family. The status of the defendant as a first offender was also presented to the trial court. In imposing the sentence, the trial court considered that the victim was elderly and further noted that there is no likelihood of restitution, the seriousness of the offense, the conduct of the defendant, and the applicable law. The record provides an ample basis for the imposition of the four-year sentence upon the defendant. Assignments of error numbers three and .four are without merit.
CONVICTION AND SENTENCE AFFIRMED.