**STATE of Louisiana**

v.

**Skylleur HAYES**

**NO. 2016 KA 0441**

Court of Appeal of Louisiana,
First Circuit.

Judgment Rendered: SEPTEMBER 19, 2016

Joseph L. Waitz Jr., District Attorney, Jay J. Luke, Ellen K. Doskey, Assistant District Attorneys, Houma, Louisiana, Attorneys for Plaintiff/Appellee, State of Louisiana

John H. Thomas, Cynthia K. Meyer, New Orleans, Louisiana, Attorneys for Defendant/Appellant, Skylleur Hayes

BEFORE: WELCH, CRAIN, AND HOLDRIDGE, JJ.

CRAIN, J.

The defendant, Skylleur Hayes, appeals his conviction for second degree murder and sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. We affirm.

## FACTS

At approximately 10:20 a.m. on March 28, 2014, Barbara Baker called 911 and requested that police come to her apartment because the defendant, her on-and-off boyfriend, was there with a gun. She indicated that the defendant had just left, but was coming back, and that she would leave the back door open for the police to sneak up on him. The defendant had walked out of the apartment in search of cigarettes, but ran back inside after seeing a policeman who he mistakenly thought was his probation officer. The defendant locked all of the doors and picked up his

.380 caliber semi-automatic pistol. When he saw more police arriving, he and Baker moved into a small bathroom. As the defendant stood in front of the sink and Baker sat on the toilet, the defendant shot Baker in the head killing her. During hostage negotiations, the defendant released his and Baker's one-year-old child, who was also in the apartment, in exchange for a cigarette. The defendant was apprehended hiding in the attic of an adjoining apartment, and in a recorded statement, admitted that he shot Baker.

## SUFFICIENCY OF THE EVIDENCE

■ The defendant was convicted of second degree murder. On appeal, he contends that the evidence was insufficient to support the conviction.

■ A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV, La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, an appellate court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt based on the entirety of the evidence, both admissible and inadmissible, viewed in the light most favorable to the prosecution. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Oliphant*, 13–2973 (La. 2/21/14), 133 So.3d 1255, 1258; *see also* La. Code Crim. Pro. art. 821B; *State v. Mussall*, 523 So.2d 1305, 1308–09 (La.1988). When circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *Oliphant*, 133 So.3d at 1258. The due process standard does not require the reviewing court to determine whether it believes the witnesses or whether it believes the evidence establishes guilt beyond a reasonable doubt. *State v. Mire*, 14–2295 (La. 1/27/16), ___ So.3d ___, ___ (2016 WL 314814). Rather, appellate review is limited to determining whether the facts established by the direct evidence and inferred from the circumstances established by that evidence are sufficient for *any* rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Alexander*, 14–1619 (La.App. 1 Cir. 9/18/15), 182 So.3d 126, 129, *writ denied*, 15–1912 (La. 1/25/16), 185 So.3d 748.

■ As it relates to this case, second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. *See* La. R.S. 14:30.1A(1). Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). It may be formed in an instant. *State v. Mickelson*, 12–2539 (La. 9/3/14), 149 So.3d 178, 182. Because it is a state of mind, specific intent need not be proven as a fact, but may be inferred from the circumstances surrounding the defendant's actions. *Mickelson*, 149 So.3d at 182.

The defendant does not dispute that he killed Baker, but argues that the state failed to sufficiently prove that he had the requisite specific intent to kill or inflict great bodily harm. Prior to trial, the defendant notified the court and state that he intended to present an intoxication defense, alleging that Baker gave him "mollies" or "bath salts" several hours prior to the homicide. On appeal, the defendant maintains that he was intoxicated when he killed Baker and argues that the state failed to exclude the reasonable hypothesis that the gun accidentally discharged.

Voluntary intoxication is a defense to a prosecution for second degree murder when the circumstances indicate that intoxication precluded the defendant from forming the requisite specific intent. *See* La. R.S. 14:15(2); *Mickelson*, 149 So.3d at 183. The defendant has the burden of proving his intoxication defense. *Mickelson*, 149 So.3d at 183. Thereafter, the state must negate that defense by proving beyond a reasonable doubt that specific intent was present despite the defendant's alleged intoxication. *Mickelson*, 149 So.3d at 183. The question of whether the defendant's intoxication precluded him from forming specific intent is a question to be resolved by the jury. *Mickelson*, 149 So.3d at 183.

The crime scene investigator who processed the crime scene testified that he found some bags of marijuana, including a Ziploc bag containing sixty-six smaller bags, on a shelf in a bedroom closet of the apartment. However, he did not find any other drugs, or drug-related items. Specifically, he found no "MDMA" or "mollies." The state also presented evidence that a drug screen performed on blood drawn from Baker's heart on the day she died detected no drugs. The coroner who performed the autopsy on Baker testified that the drug screen tested for the presence of commonly abused drugs, and was not sure if that would include testing for "bath salts." However, the coroner testified that it was ninety-nine percent probable that there were no drugs in Baker's system.

Officer Herbert Fitch Jr. of the Terrebonne Parish Sheriff's Office interacted with the defendant while the defendant was in the apartment and handled the hostage negotiation that resulted in the defendant releasing his child. Officer Fitch testified that the defendant appeared to be a little nervous, but indicated that the defendant did not appear to be drunk or "out of his mind." Nor did Officer Fitch smell marijuana. Detective Keith Craft of the Houma Police Department also had a brief interaction with the defendant and noticed nothing unusual about the defendant's speech or thought processes.

Detective David Wagner of the Houma Police Department was one of the officers who entered the apartment after the defendant shot Baker. Detective Wagner identified a photograph of the scene that showed the attic access in the hallway ceiling. Detective Wagner testified that the attic access port had been moved, which confirmed suspicions that the defendant was in the attic.

Detective Rusty James Theriot of the Houma Police Department was one of the first officers at the scene and was the officer who the defendant thought was his probation officer. Detective Theriot confirmed that after police entered the apartment, they saw that the attic access had been kicked open and knew the defendant was in the attic. After the defendant surrendered, an officer escorted the defendant to the ground, where Detective Theriot assisted in handcuffing the defendant. The defendant was then taken to the Houma Police Department in a police unit.

Detective Theriot then participated in the interview in which the defendant waived his rights and gave his statement. Detective Theriot testified that the defendant stated in the interview room that "they smoked weed in the bathroom." However, Detective Theriot testified that he had no trouble understanding the defendant and the defendant did not give the impression of being under the influence. Detective Theriot also indicated that the defendant was not acting erratic, threatening, or paranoid, and was not "bouncing off the walls."

The video recording of the interview, taken only hours after the crime, was

played for the jury, which allowed them to observe the defendant's demeanor. During the recording, the defendant did not state that he was intoxicated. He recalled seeing Detective Theriot and described thinking that Detective Theriot was his probation officer. The defendant responded to the detective's questions and admitted that he shot Baker in the head.

According to the defendant, he and Baker went into the bathroom because it had only one small window and he was preparing for a shootout. He explained that he and Baker were not arguing. The defendant said Baker was sad because she thought he would let the police kill him that day. He described Baker sitting on the toilet, crying, and shaking her head. The defendant was standing in front of the sink holding the gun. He described extending his arm and holding the gun a short distance from Baker's head, then shooting her. When asked why he shot his girlfriend, he at times stated he did not know, but at one point answered that he guessed he just wanted her to be able to come with him, referring to his belief that he would die that day. The defendant denied knowing that the police were there because Baker called 911, stating he believed it was a neighbor who called.

The defendant was equivocal about whether his son was in the bathroom when he shot Baker, but said the child started crying. The defendant described closing the door of the bathroom, picking up the child and telling the child he was sorry. The defendant said the child looked at him "with a mad face," but then put his head on the defendant's shoulder and patted the defendant's back. The defendant described going to a window and speaking with Officer Fitch, who the defendant identified by name. He described releasing his son to police through the back door, but only after he dressed the child to look "nice and neat."

After releasing his son, the defendant went into the attic with the gun. He stated that he saw police coming into the other attic and fired the gun into the ceiling to warn them that he was there, but with no intention of hurting them. He stated he thought the police would then start shooting at him. The defendant explained that he then threw down his gun.

The sole evidence presented by the defense was the testimony of the defendant's father, Steven Hayes Sr. According to Hayes Sr., the defendant was "on the run" from the Thibodaux police at the time of the homicide. Hayes Sr. testified that the defendant was drinking and taking drugs during the twenty-four hours prior to the crime, but stated he had not spoken with his son during that time. Hayes Sr. also testified that the defendant appeared to be under the influence, explaining that he was called to the crime scene and saw the defendant being escorted out of the apartment in handcuffs. In fact, Hayes Sr. testified, the defendant walked by him without recognizing him.

After considering all of the evidence presented in the light most favorable to the state, we conclude that it was reasonable for the jurors to decide that the defendant was either not intoxicated, or that he was not so intoxicated as to preclude the presence of specific intent. Detective Theriot testified that the defendant said he had done drugs, but in his statement the defendant did not indicate he was intoxicated, and Detective Theriot did not have the impression that the defendant was under the influence. Hayes Sr. testified that he believed the defendant used drugs in the twenty-four hours prior to the crime, but he did not speak to the defendant during that time. Nor did Hayes Sr. speak to the defendant immediately after

the crime. As the trier of fact, the jury was free to make credibility determinations and, within the bounds of rationality, accept or reject the testimony of any witness. *State v. Lee*, 14–2374 (La. 9/18/15), 181 So.3d 631, 636. And where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight given the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. |₈*State v. Hartman*, 15–1023 (La.App. 1 Cir. 2/17/16), 189 So.3d 458, 465. Though defense counsel argued that the defendant's statement showed that the defendant was rambling and therefore intoxicated, it was reasonable for the jury to conclude otherwise.

 The defendant additionally argues that the state's evidence failed to exclude the reasonable hypothesis that the gun accidentally discharged. Defense counsel argued at trial that the defendant was in the bathroom with Baker "trying to smoke a joint." Defense counsel posited that the defendant was holding the gun, which discharged when his child, who was outside the bathroom, bumped the defendant with the bathroom door. We find that it was reasonable for the jury to reject defense counsel's hypothesis. The defendant did not suggest that the shooting was accidental in his statement. Rather, he repeatedly stated that he shot her in the head, admitting that he knew shooting his girlfriend in the head was "not right." When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. *State v. Moten*, 510 So.2d 55, 61 (La.App. 1st Cir.), *writ denied*, 514 So.2d

126 (La.1987). No such hypothesis is present here.

The defendant admitted that he shot Baker at close range, thereby indicating specific intent to kill or inflict great bodily harm. *See State v. Robinson*, 02–1869 (La. 4/14/04), 874 So.2d 66, 74, *cert. denied*, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004). Although not conclusive of his guilt, it is relevant that the defendant, after negotiating the release of his child, climbed into the attic through an access point in the ceiling. *See State v. Brown*, 02–1922 (La. 5/20/03), 846 So.2d 715, 722 (attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the fact finder may infer guilt).

The entirety of the evidence, both admissible and inadmissible, is sufficient |₉to support the defendant's conviction; therefore, the defendant is not entitled to an acquittal. We now consider the remaining assignments of trial error to determine whether the defendant is entitled to a new trial. *See State v. Hearold*, 603 So.2d 731, 734 (La.1992).

## JURY CHARGE ON INTOXICATION

 With regard to the defendant's intoxication defense, the trial court instructed the jury:

> The fact that a person was intoxicated or drugged at the time of the commission of a crime is usually no defense. However, if circumstances indicate that an offender was so intoxicated that it prevented him from forming a specific intent or special knowledge required in a particular crime, this fact constitutes a defense to prosecution for that crime.

On appeal, the defendant argues that this instruction that included the word "so" to modify "intoxicated," as opposed to an instruction that included only a verbatim recitation of the statute on intoxication,

was prejudicial to the defense and resulted in a miscarriage of justice. The defendant contends that "the State used the inclusion of the word 'so' to argue that had [the defendant] been so 'looped up' that he did not know what he was doing when he shot . . . Baker, he would not have been able to pull himself into the attic."

We find no merit to the defendant's argument. The legal issue raised by the defendant's intoxication defense was whether, at the time he killed Baker, he was so intoxicated as to preclude the existence of any specific intent on his part to kill her or inflict great bodily harm on her. *See* La. R.S. 14:15(2); La. R.S. 14:30.1A(1); *State v. Lentz,* 306 So.2d 683, 686 (La. 1975); *State v. Godbolt,* 06–0609 (La.App. 1 Cir. 11/3/06), 950 So.2d 727, 730–31. The jury charge given by the trial court correctly stated the law and we find no prejudice to the defendant.

### OBJECTION TO 911 CALL

■ As part of its case, the state played the recording of the 911 call that Baker made. The evidence was presented after the trial court denied the defendant's motion *in limine* that sought to exclude the 911 call on the basis that it constituted testimonial hearsay and, as such, violated his right to confrontation, as guaranteed by the Sixth Amendment to the United States Constitution. On appeal, the defendant assigns as error the trial court's denial of the motion.

■ In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. U.S. Const. amend. VI. The Confrontation Clause bars admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). Statements in a 911 call are not testimonial when made for the primary purpose of enabling police to meet an ongoing emergency. They are testimonial when there is no such ongoing emergency and the statements are made for the primary purpose of establishing past events potentially relevant to later criminal prosecution. *See Davis v. Washington,* 547 U.S. 813, 817, 126 S.Ct. 2266, 2270, 165 L.Ed.2d 224 (2006).

During the 911 call, Baker stated that she needed the police at her address because the defendant was there. She told the operator to tell the police to turn off their sirens because she wanted them to sneak up on the defendant, and that she would leave the back door unlocked. Baker then told the operator that the defendant "just left out, he's coming back. He has a gun. I'm trying to get the gun." The operator told Baker to stay on the line and Baker responded, "I have to go." The operator again told Baker not to hang up the phone.

Baker did not make any other statements, but did not hang up. Approximately three minutes later "No" can be heard in the background. Approximately twenty-four minutes after Baker's statement that she had to go, a gunshot can be heard. The recording continues for almost an hour, during which time the defendant can be heard, apparently releasing his son to police and claiming that he had a hostage.

The few statements by Baker on the 911 recording are not testimonial. They were made under circumstances that objectively reveal that their primary purpose was to get police assistance to meet the ongoing emergency of the defendant's presence with the gun. The trial court did not err in denying the defendant's motion *in limine* to exclude the 911 call from evidence.

## MOTION TO SEVER

 The defendant additionally contends that the trial court erred in denying his motion to sever the offenses of second degree murder and possession of a firearm by a convicted felon. After a grand jury indicted him for second degree murder, the state charged the defendant by bill of information with possession of a firearm by a convicted felon based on a prior conviction for simple burglary. On appeal, the defendant argues that trial of the two charges together resulted in the jury being presented with evidence of other crimes (his prior simple burglary conviction), which portrayed him as a man of bad character.[1]

 In considering a motion to sever, the trial court must consider whether the jury would be confused by the various charges, whether the jury would be able to segregate the various charges and evidence, whether the defendant could be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. *State v. Crochet*, 05–0123 (La. 6/23/06), 931 So.2d 1083, 1087; *State v. Washington*, 386 So.2d 1368, 1371 (La. 1980). For purposes of appellate review, the defendant must show that he was prejudiced by trial of the two offenses together to establish that his substantial rights were affected. *See Crochet*, 931 So.2d at 1086; *State v. Strickland*, 94–0025 (La. 11/1/96), 683 So.2d 218, 226.

The evidence in this case was not presented in a confusing manner. The defendant stipulated that he was convicted of simple burglary on March 14, 2013, and was on supervised probation on the date of the homicide. The jury was then instructed that evidence of the defendant's prior conviction was admitted only to establish the elements of the charge of possession of a firearm by a convicted felon. Neither has the defendant proven that the jury was unable to segregate the charges and evidence, or that he was confounded in presenting his intoxication defense. Finally, the defendant has not established that the jury used the crimes charged to infer a criminal disposition or that the trial of the two crimes made the jury hostile.

The defendant has not established that consolidation of the offenses for trial caused him unfair prejudice. *Accord State v. Morris*, 99–3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 915, *writ denied*, 00–3293 (La. 10/12/01), 799 So.2d 496, *cert. denied*, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002) (finding no error in the trial court's denial of a motion to sever a charge of possession of a firearm by a convicted felon from charges of armed robbery, aggravated kidnapping, and second degree murder). Consequently, a new trial is not warranted.

## CONVICTION AND SENTENCE AFFIRMED.

---

1. The defendant's appeal is limited to his second degree murder conviction. Thus, we consider the arguments regarding the felon with a firearm conviction in this context only.