HIGGINBOTHAM, J.
Defendant, James McIntosh, was charged by bill of information with two counts of distribution of heroin, a violation of La. R.S. 40:966 (counts one and two), and two counts of distribution of marijuana, a violation of La. R.S. 40:966 (counts three and four). He pled not guilty. Defendant filed motions to suppress and exclude testimony, which were denied after hearings. After a trial by jury, the defendant was found guilty as charged. The trial court imposed concurrent terms of twenty-five, twenty-five, five, and five years imprisonment at hard labor. Following the State's filing of a multiple offender bill of *4 information on counts one and two, defendant and the State stipulated to his being a second-felony offender on those counts, and the trial court vacated defendant's sentences on counts one and two, and resentenced defendant to concurrent terms of thirty years imprisonment at hard labor. The defendant now appeals.
STATEMENT OF FACTS
In late 2015, Louisiana State Police ("LSP") Trooper John Heath Miller ("Trp. Miller") received a tip through Crime Stoppers regarding narcotics sales occurring in St. Tammany Parish. After confirming the tip with some of his confidential sources, he began an investigation into defendant. Trp. Miller brought in an undercover officer, LSP Trooper Sarah Gilberti-Abbott ("Trp. Gilberti"), to coordinate with a confidential source to provide an introduction to defendant and negotiate a $ 140.00 narcotics purchase. The first meeting was arranged to take place at a Rouses's parking lot in Covington on November 19, 2015, and was to be for the purchase of heroin and marijuana. With other law enforcement officers surveilling the location, defendant and Trp. Gilberti parked side by side. The confidential source, who was with Trp. Gilberti, got out of the vehicle and conducted a hand-to-hand transaction for marijuana and heroin within the view of Trp. Gilberti. The narcotics were recovered by other troopers immediately thereafter and tested at the State Police laboratory to confirm their authenticity. Later fingerprint analysis determined defendant was the source of a fingerprint on a bag of marijuana obtained during the November 19, 2015 drug buy.
On December 1, 2015, Trp. Gilberti and the confidential source again arranged to meet defendant in order to purchase heroin and marijuana at the Sonic Drive-in in Mandeville where defendant was employed. This portion of the investigation was partially recorded, and the video recording was played for the jury. While waiting for a third party to obtain the drugs from another location for defendant to sell to Trp. Gilberti, defendant and the confidential source spoke about text messages that they had sent to each other earlier in the day. The transaction was taking far longer than anticipated, and the confidential source was complaining about how she thought it had been set up well in advance through texts between them earlier in the day. Shortly thereafter the playback stopped due to a dead battery on the recording device. The third party returned in defendant's car, and defendant returned to Trp. Gilberti's vehicle. Defendant then conducted a hand-to-hand transaction, taking money from Trp. Gilberti and handing her heroin and marijuana in exchange. The narcotics were recovered by the investigating troopers soon after and were tested to confirm their authenticity.
ASSIGNMENT OF ERROR # 1: OTHER CRIMES EVIDENCE
In assignment of error number one, defendant contends that the State improperly introduced other crimes evidence when it purposefully sought to highlight the fact that defendant was already incarcerated for an unrelated offense at the time the arrest warrant for the instant offenses was executed. Defendant unsuccessfully requested a mistrial after the alleged prejudicial comments. The State asserts that by failing to object to the initial mention of defendant being arrested for another offense, defendant effectively waived the claim on appeal. Moreover, the State argues that trial counsel "opened the door" during cross-examination.
A mistrial under the provisions of La. Code Crim. P. art. 771 is at the *5 discretion of the trial court and should be granted only where the prejudicial remarks of a witness who is not a court official make it impossible for a defendant to obtain a fair trial. State v. Kitts, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 968. However, an impermissible reference to another crime deliberately elicited of a witness by the prosecutor is imputable to the State and mandates a mistrial under La. Code Crim. P. art. 770. State v. Lawson, 2018-0382 (La. App. 1st Cir. 11/8/18), 2018 WL 5876815 *11 (unpublished). Because a mistrial is a drastic remedy that should be granted only when a defendant suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial, "mere possibility of prejudice is not sufficient." State v. Caminita, 2016-0121 (La. App. 1st Cir. 9/16/16), 203 So.3d 1100, 1106, writ denied, 2016-2045 (La. 9/6/17), 224 So.3d 988. A reviewing court should not reverse a defendant's conviction and sentence unless the error has affected the substantial rights of the accused. See La. Code Crim. P. art. 921. Determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal without finding an abuse of that discretion. State v. Friday, 2010-2309 (La. App. 1st Cir. 6/17/11), 73 So.3d 913, 933, writ denied, 2011-1456 (La. 4/20/12), 85 So.3d 1258.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. Pierre, 2012-0125 (La. App. 1st Cir. 9/21/12), 111 So.3d 64, 68, writ denied, 2012-2227 (La. 4/1/13), 110 So.3d 139 : see also La. Code Crim. P. art. 770(2). However, when counsel "opens the door" to the complained-of subject matter, "the other party can then explore the subject fully." State v. Hunt, 310 So.2d 563, 568 (La. 1975). Prior notice of intent to disclose other bad acts is not required when the door has been so opened. State v. Marcotte, 2001-1586 (La. App. 3rd Cir. 5/15/02), 817 So.2d 1245, 1253.
During cross-examination, defense counsel asked Trp. Miller if he had planned on purchasing any more drugs from defendant, to which Miller responded that he had. When asked if he made any more purchases, Trp. Miller responded that he could not make any more purchases because defendant was incarcerated. Defense counsel made no objection. Later, while on redirect examination, Trp. Miller, in response to the State's questions, revealed that the narcotics investigation stopped because defendant was arrested for something else and was incarcerated in the St. Tammany Parish Jail. At that point, defense counsel objected and moved for mistrial. The trial court found defense counsel had "opened the door" by asking why the investigation had stopped, thereby revealing defendant's unrelated incarceration. The trial court did note, however, that the door was "not opened to every other witness."
Here, it is uncontested that defense counsel asked Trp. Miller why no more undercover narcotics purchases were made in the instant investigation. Thus, Trp. Miller's original answer was not elicited by the State. The subsequent State questioning fell within the ambit of redirect examination to clarify, and respond to, points made during cross-examination by defense counsel.
Moreover, even had defense counsel not "opened the door" to further testimony regarding defendant's custody status at the time of his arrest on the instant charges, that reference alone was not sufficient to warrant a mistrial. See *6 State v. Stevens, 2013-1162 (La. App. 3rd Cir. 6/18/14), 140 So.3d 1267, 1282 writ denied, 2014-1530 (La. 12/8/14), 156 So.3d 42 ; cf. State v. Hayes, 2010-685 (La. App. 5th Cir. 5/24/11), 70 So.3d 27, 40, writ denied, 2011-1370 (La. 2/3/12), 79 So.3d 1024.
The trial court in the instant case did not abuse its considerable discretion in finding that defendant opened the door to Trp. Miller's testimony about why the investigation ended, giving the State an opportunity to prompt more testimony regarding the procedural details of why the investigation ended when it did. This claim is without merit.
ASSIGNMENT OF ERROR # 2: CONFRONTATION ERROR
In his second assignment of error, defendant contends that the trial court erred in denying his pre-trial motions attempting to exclude evidence consisting of the confidential source reading on the surveillance recording text messages alleged to have come from defendant. With the confidential source unavailable at trial to cross-examine, defendant asserts his right to confrontation of witnesses was abridged by the trial court's ruling at the pre-trial hearing. At the hearing, the State argued that the statements by the confidential source were not made in anticipation of using them at a subsequent prosecution, and alternatively that they were being introduced for context, not for their actual content, and were consequently not hearsay. The trial court ultimately found the statements were neither testimonial, nor hearsay, but instead the confidential source's "words under surveillance."
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant the meaningful opportunity to present a complete defense. State v. Dressner, 2008-1366 (La. 7/6/10), 45 So.3d 127, 137, cert. denied, 562 U.S. 1271, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011) ; State v. Stokes, 2014-1562 (La. App. 1st Cir. 6/17/15), 175 So.3d 419, 423. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." Out-of-court statements that are testimonial are barred under the Confrontation Clause, unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witnesses. Crawford v. Washington, 541 U.S. 36, 68-69, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) ; State v. Tsolainos, 2007-2443 (La. App. 1st Cir. 10/10/08), 997 So.2d 46, 48 (per curiam), writ denied, 2008-2653 (La. 10/9/09), 19 So.3d 6. The Crawford court drew a distinction between testimonial and nontestimonial statements and confined its holding to testimonial evidence. Crawford, 541 U.S. at 61-68, 124 S.Ct. at 1370-74. Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose is to establish or prove past events potentially relevant to later criminal prosecution. Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006) ; State v. Hayes, 2016-0441 (La. App. 1st Cir. 9/19/16), 204 So.3d 201, 208, writ denied sub nom., State v. Hazes, 2016-1886 (La. 9/6/17), 224 So.3d 979.
As an initial matter, it is uncontested that the confidential source was unavailable at trial, and in fact remained unidentified. Thus, the dispositive question *7 becomes whether her statements were testimonial or nontestimonial. Here, there is nothing in the record suggesting whether or not the confidential source knew she was being recorded.[1] That being the case, giving defendant the benefit of assuming the confidential informant was so aware, the statements she was making to Trp. Gilberti could reasonably be presumed to constitute evidence that would be used against defendant in a later prosecution. In addition to addressing operational security concerns, the recording was intended by the LSP to serve that purpose, as demonstrated by its very existence. Moreover, the recording was used by the State at trial in its case-in-chief. Notwithstanding the fact defendant arguably confirmed at least some of the text messages came from him, because the messages themselves were not presented at trial, their introduction by the State through the confidential source rendered them testimonial out-of-court statements inadmissible under the Confrontation Clause. Cf. State v. Lang, 2013-0021 (La. App. 5th Cir. 10/9/13), 128 So.3d 330, writ denied, 2013-2614 (La. 5/2/14), 138 So.3d 1244.
Therefore, the next consideration is what impact the erroneous admission of these statements had on the result of defendant's trial. Mistaken application of the rule of Crawford is subject to harmless-error analysis. See State v. Cunningham, 2004-2200 (La. 6/13/05), 903 So.2d 1110, 1119 ; State v. Queen, 2009-1373 (La. App. 1st Cir. 2/12/10), 2010 WL 532337 *2 (unpublished), writ denied, 2010-0625 (La. 10/29/10), 48 So.3d 1098. Here, the Crawford confrontation violation was harmless. During the November 19, 2015 transaction, the confidential informant gave defendant the money in exchange for drugs received immediately in front of Trp. Gilberti. Trp. Gilberti personally took the drugs from defendant's hand after giving him money during the December 1, 2015 transaction. Trp. Gilberti made an in-court identification of defendant as the person who sold her the drugs leading to the instant four counts. Many of the statements were relative to the fact that the deal had allegedly been set up long before but was frustrating the buyers when it was so delayed in its completion. With the confidential source's statements aside, there was more than adequate evidence for a jury to find beyond a reasonable doubt that defendant committed all four counts of distribution of narcotics. Thus, the guilty verdict rendered was surely unattributable to the error. See La. Code Crim. P. art. 921 ; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) ; State v. Casey, 99-0023 (La. 1/26/00), 775 So.2d 1022, 1033, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Troquille, 2007-1486 (La. App. 1st Cir. 6/6/08), 2008 WL 2332234 *5 (unpublished), writ denied. 2008-2186 (La. 4/24/09), 7 So.3d 1197. This claim is without merit.
ASSIGNMENT OF ERROR # 3: IMPROPER CLOSING ARGUMENT
Defendant argues in his final assignment of error that the trial court erred in not granting his Motion for New Trial when the State made an improper closing argument. The State counters the statement made during closing argument was not a "personal attack" as characterized by defendant, but instead a permissible characterization of defense counsel's role.
*8 During the State's closing argument, after discussing defense counsel's arguments made over the course of the trial, the State concluded, "[s]peaking of jobs, I think we all know what Mr. Champagne's job is. And that's to try to walk his client out of the door." Defense counsel objected and, according to appellate counsel, later based his vaguely worded Motion for New Trial on, inter alia, the utterance. Defendant's entire argument on the matter is that the "improper argument of the [S]tate should have resulted in a mistrial."
Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See La. Code Crim. P. art. 774. Prosecutors are allowed wide latitude in choosing closing argument tactics. See State v. Draughn, 2005-1825 (La. 1/17/07), 950 So.2d 583, 614, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007) ; State v. Patton, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So.3d 1209, 1221. The trial judge has broad discretion in controlling the scope of closing argument. State v. Mitchell, 2016-0834 (La. App. 1st Cir. 9/21/17), 231 So.3d 710, 719, writ denied, 2017-1890 (La. 8/31/18), 251 So.3d 410. Even if the prosecutor exceeds these bounds, a reviewing court will not reverse a conviction if not "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. See State v. Prestridge, 399 So.2d 564, 579 (La. 1981). Credit must be given to the "good sense and fair-mindedness of the jurors who heard the evidence" at trial. State v. Mills, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So.3d 481, 496, writ denied, 2014-2027 (La. 5/22/15), 170 So.3d 982, writ denied sub nom., State ex rel. Mills v. State, 2014-2269 (La. 9/18/15), 178 So.3d 139.
Defendant provides nothing to support a finding of error in the exercise of the trial court's discretion. While inappropriate, the State's argument was directed at defense counsel's trial strategy and did little to prejudice defendant given the evidence properly admitted at trial. This claim is without merit.
PATENT ERROR
Pursuant to La. Code Crim. P. art. 920, this court routinely conducts a review for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. After a careful review of the record, we have found one patent sentencing error.
In State v. Augustine, 555 So.2d 1331, 1333-34 (La. 1990), the Louisiana Supreme Court indicated that a failure to observe the twenty-four hour delay provided in La. Code Crim. P. art. 873 will be considered harmless error where a defendant could not show that he suffered prejudice from the violation. See State v. White, 404 So.2d 1202, 1204-05 (La. 1981). In Augustine, the Supreme Court concluded that prejudice would not be found if a defendant had not challenged the sentence imposed and the violation of the twenty-four hour delay was merely noted on patent error review. Augustine, 555 So.2d at 1334. In the instant case, defendant has not challenged his sentence on appeal. Under these circumstances, this patent sentencing error is harmless. Accordingly, any error in the trial court's failure to observe the twenty-four hour delay is harmless beyond a reasonable doubt and does not require a remand for resentencing. Cf. State v. Magee, 2017-1217 (La. App. 1st Cir. 2/27/18), 243 So.3d 151, 165.
*9 CONVICTIONS, HABITUAL OFFENDER ADJUDICATIONS, AND SENTENCES AFFIRMED.

During the recording of the Sonic Drive-in transaction, Trp. Gilberti can be heard telling the confidential source that they were "still rolling," likely a reference to the contemporaneous recording.