WHIPPLE, J.
| ¿The defendant, Delis Pierre, was charged by bill of information with two counts of armed robbery, second degree kidnapping, and purse snatching, violations of LSA-R.S. 14:64, LSA-R.S. 14:44.1, and LSA-R.S. 14:65.1. The State severed one of the armed robbery charges and, after a trial by jury, the defendant was found guilty as charged on the remaining counts. On the armed robbery conviction, the trial court sentenced the defendant to ninety-nine years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. On the second degree kidnapping conviction, the trial court sentenced the defendant to twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. On the purse snatching conviction, the trial court imposed a sentence of twenty years imprisonment at hard labor. The sentences are to be *66 served concurrently. The defendant now appeals, assigning error to the trial court’s denial of his motion for mistrial and to the ineffective assistance of counsel. For the following reasons, we affirm the convictions and sentences.

STATEMENT OF FACTS

During the early morning hours of October 10, 2010, before sunrise, Angela Sam-pere Gomez exited a friend’s apartment in Hammond, Louisiana, and began walking to her vehicle that was parked on Oak Street about a block from the apartment. As she walked along Thomas Street, a white pickup truck approached and the driver leaned over the window and asked her if the bars were still open. Noting that it was clearly past 2:00 a.m., Gomez responded negatively and kept walking. The driver then asked Gomez, “Is this Hammond?” After Gomez responded positively, the driver put his truck’s gearshift in park, opened his door, stumbled out of the truck, and grabbed Gomez. A physical struggle ensued. As she fought with the defendant, Gomez began screaming. As she fell backwards |sonto the ground, the perpetrator stood over her, grabbed her purse, ran back to his truck and headed west. The perpetrator’s flip-flop sandals came off during the attack, and he abandoned them at the scene. Gomez alerted bystanders at a nearby store of the attack. The police were summoned and arrived at the scene within five to ten minutes, and Gomez provided a statement including a description of the perpetrator. The police seized the perpetrator’s sandals.
On October 28, 2010, Milton Perilloux, an employee of a Hammond, Louisiana Wal-Mart store, exited the Wal-Mart at the end of his shift at 11:09 p.m. (as shown in a store surveillance photograph) and began walking home. According to Peril-loux, as he entered a Wendy’s restaurant parking lot, he observed a white pickup truck pull into the lot and the driver, the defendant, rolled down his window and began talking to him, indicating that he needed food. The defendant exited his truck and walked around it, leaving the driver’s door open and still asking for assistance. As Perilloux turned around to point to a nearby church, the defendant grabbed Perilloux’s sleeve, put a sharp object to his neck, and threatened to stab him with the object if he did not give the defendant money. Perilloux pleaded for his life, stating that he had a pregnant wife at home. Perilloux stated that he didn’t have any money and after the defendant threatened to kill him, he added that he did have cards. The defendant coerced Perilloux into his truck and drove to a nearby ATM machine. Perilloux tried to get out of the vehicle, but the passenger door was broken and would not open. The defendant demanded Perilloux’s ATM card and Pin number. The defendant took $200.00 from Perilloux’s account, let Peril-loux out of the vehicle, and drove away.
Perilloux called the police and reported the incident. Surveillance photographs introduced during the trial showed the defendant arriving at the ATM at 11:22 p.m., using the machine, and stepping out of his vehicle just before |4Perilloux got out of the truck. On November 1, 2010, Peril-loux identified the defendant as the perpetrator from a photographic lineup.
During a recorded interview with the police, the defendant admitted taking Per-illoux to an ATM machine and using Peril-loux’s ATM card to withdraw $200.00 from his account. However, the defendant contended that Perilloux approached his truck as he sat in a parking lot smoking crack and asked to smoke with him. The defendant indicated that he allowed Perilloux to enter his truck, noting that he had to step out and let Perilloux slide in from the *67 driver’s side, since the passenger door was broken. According to the defendant, he allowed Perilloux to smoke some of his crack while they sat in his truck in the parking lot for about thirty minutes smoking and talking. The defendant further claimed in the interview that Perilloux instructed him to take him to the ATM machine, and gave the defendant his card and Pin number to take money from his account to pay for crack the defendant provided. He stated that he accidentally removed more money than Perilloux owed him for the crack, but claimed that Peril-loux kept the extra money.
The defendant also testified at trial, providing a varied version of the incident. He admitted that he stole money from the victim, adding that he was only supposed to remove $20.00 from Perilloux’s account and that after Perilloux realized that he withdrew $200.00, he chased the defendant out of the parking lot. The defendant repeatedly denied using a weapon. Peril-loux denied ever smoking crack or knowing the defendant or giving him permission to take any money from his account.
A sample of the defendant’s DNA and the sandals collected at the scene of the purse-snatching offense were submitted to the Louisiana State Police Crime Lab for testing. The police also showed the photographic lineup to Gomez, more than two weeks after her attack. However, by that time, she was unable to identify |sher attacker. At trial, however, she positively identified the defendant as her attacker. During the trial, the State and the defense stipulated that the defendant’s DNA was on the sandals. During his trial testimony, the defendant admitted to stealing Gomez’s purse, but denied physically attacking Gomez. The defendant claimed that he only picked up the purse after Gomez dropped it, as she tried to run from him and tripped and fell.

ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues that the trial court erred and/or abused its discretion in denying his motion for mistrial based on the admission of “other crimes” evidence contained in the recorded interview introduced by the State. The defendant notes that LSA-C.Cr.P. arts. 770 and 771 do not impose a duty upon defense counsel to take affirmative action before trial to ensure that the evidence the State plans to introduce has been purged of all unwarranted references to other crimes. The defendant argues that unwarranted references to other crimes were effectively made by the prosecutor herein, since he introduced the evidence in question. The defendant argues that a mistrial should have been declared pursuant to LSÁ-C.Cr.P. art. 770. The defendant further contends that there is no support for the trial court’s conclusion that defense counsel waived his objection and any relief. The defendant alternatively argues that the trial court should have admonished the jury pursuant to LSA-C.Cr.P. art. 771.
Just before the trial started in this case, the defense counsel advised the court that he had filed a motion in limine to excise references to other crimes from the recorded interview of the defendant.[1] The parties agreed to listen to the interview | (¡before playing it for the jury to extract all objectionable portions. Before introducing the evidence, the State requested a recess to allow the defense to review the recording, and the jury was retired. The *68 defense counsel noted that he had already watched the recording several times, but stated that he would watch it again to determine which portions could be played before the jury. The defendant’s interview consisted of two recordings. The parties agreed to stop the first recording (S-3), the one at issue, at nineteen minutes and ten seconds and to play forty seconds of the other recording. Near the beginning of the recording in question, Detective Milton of the Hammond Police Department stated the following:
What we’re going to be talking about today is actually several, several cases.... [T]he first one is going to be a second-degree kidnapping and also an armed robbery, ... its fife number 26641. Also, we’re going to be talking about ... a purse snatching, and that’s going to be file number 25304, and then another armed robbery ... file number 26342 and another ... purse snatching. This is, is this yours? — 26136.
At this point, the defense counsel requested to approach the bench and noted that he could not hear that portion of the recording earlier and assumed that the detective was still explaining the defendant’s rights. Noting that the detective mentioned the severed armed robbery charge and another offense (another purse snatching) for which the defendant was not charged in this case, the defense attorney moved for a mistrial. In response, the State noted that defense counsel had moved to extract any commentary in reference to other crimes and was given an ample opportunity to object to any portion of the recording and have it extracted. The State further contended that the jury would not notice the portion of the tape in question without further emphasis and that it was not unduly prejudicial. The trial court agreed with the State and denied the motion.
A mistrial is a drastic remedy that should be granted only when the defendant suffers such substantial prejudice that he has been deprived of any 17reasonable expectation of a fair trial. Moreover, determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Berry, 95-1610 (La.App. 1st Cir.11/8/96), 684 So.2d 439, 449, writ denied, 97-0278 (La.10/10/97), 703 So.2d 603.
Generally, evidence of crimes other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. Millien, 2002-1006 (La. App. 1st Cir.2/14/03), 845 So.2d 506, 513. Under certain circumstances, the admission of inadmissible other crimes evidence can warrant the granting of a mistrial. See LSA-C.Cr.P. arts. 770, 771, & 775. Louisiana Code of Criminal Procedure article 771 requires the trial judge to admonish the jury to disregard a comment made within the hearing of the jury that is irrelevant, immaterial, or prejudicial to the defendant or the State, when an admonishment is requested by the defendant or the State. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. LSA-C.Cr.P. art. 771.[2]
*69 Pursuant to LSA-R.S. 15:450, “[e]very confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.” That provision contains no exception for excluding portions of a confession or admission that refer to other crimes. The jurisprudence |shas resolved the conflict between the rules precluding the admission of other crimes evidence and the requirement of LSA-R.S. 15:450 that the entirety of an inculpatory statement be admitted by giving the defendant the option to waive the right of having the whole statement introduced. See State v. Blank, 2004-0204 (La.4/11/07), 955 So.2d 90, 131-32, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007); State v. Snedecor, 294 So.2d 207, 210 (La.1974). In State v. Morris, 429 So.2d 111, 121 (La.1983), the Supreme Court explained a defendant’s options under LSA-R.S. 15:450, in the context of the issue of other crimes evidence, as follows:
[W]hen the state seeks to introduce a confession, admission or declaration against a defendant which contains other crimes evidence, but which is otherwise fully admissible, the defendant has two options. He may waive his right to have the whole statement used, object to the other crimes evidence, and require the court to excise it before admitting the statement; or, he may insist on his right to have the statement used in its entirety so as to receive any exculpation or explanation that the whole statement may afford.
In this case, the defendant waived his right to have the whole statement used and objected to the admission of other crimes evidence. However, the defendant did not fully “require” the court to excise all of the other crimes evidence before the statement was admitted. Nonetheless, the erroneous admission of other crimes evidence is subject to a harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-02. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). In this case, the evidence of the defendant’s guilt was overwhelming, including the defendant’s own pretrial statement and trial testimony. Further, as the defendant testified at the trial, his criminal record was elicited and shown to include nine other convictions. Although the detective’s brief, unsolicited reference to two other crimes being investigated was admitted | ¡¡into evidence, we find harmless error in light of the entire record, as the guilty verdicts were surely unattributable to the error. See LSA-C.Cr.P. art. 921. Accordingly, we find no abuse of discretion in the trial court’s denial of the defendant’s motion for mistrial. Further, we reject the defendant’s remaining argument, noting that an admonition was not requested in this case.
Thus, assignment of error number one lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO

In the second assignment of error, the defendant contends his trial counsel was ineffective in failing to prevent the jury from hearing that he had two other outstanding cases, where trial counsel had a *70 copy of the taped statement for months before the trial. The defendant argues that his trial counsel’s performance fell below an objective standard of reasonableness, and there was no legitimate defense strategy for counsel’s failure to take appropriate action to prevent the jury from hearing the portion of the tape that referred to other crimes. Finally, the defendant argues that his trial counsel’s inadequate performance prejudiced him to the extent that the trial was rendered unfair and the verdicts “suspect.”
The Sixth and Fourteenth Amendments guarantee the defendant in a state criminal proceeding assistance of counsel for his defense. A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted.[3] Where the record discloses evidence needed to decide the issue of ineffective assistance of counsel and the issue was raised by assignment of error on appeal, the issue may be addressed in the interest of judicial economy. State v. Lockhart, 629 So.2d 1195, 1207 (La.App. 1st Cir.1993), writ denied, 94-0050 (La.4/7/94), 635 So.2d 1132.
|inIn Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-part test for review of a convicted defendant’s claim that his counsel’s assistance was so defective as to require reversal of a conviction. First, the defendant must show that counsel’s performance was deficient. Second, the defendant must show that this deficient performance prejudiced the defense. The first prong of the test examines whether the attorney violated some duty to the client. The second prong of the test requires a showing of prejudice, resulting from defense counsel’s deficient performance, without which the result of the proceedings would have been different. The defendant must show there is a reasonable probability that, but for his counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. State v. Robinson, 471 So.2d 1035, 1038-39 (La.App. 1st Cir.), writ denied, 476 So.2d 350 (La.1985).
In this case, it is undisputed that the defense counsel received a copy of the videotaped statement well in advance of trial. Therefore, defense counsel was charged with knowledge of what the statement contained and had the option at that point of either having the entire statement played or of waiving that right and having the allegedly objectionable portions of the videotape redacted. However, we have determined above that the admission of the other crimes evidence was harmless in this case. Thus, even if the defense counsel was deficient in not having all objectionable portions of the recording excised, the defendant has failed to show that prejudice resulted from the deficiency. Further, the defense counsel’s failure to request an admonition may have involved trial strategy. Under our adversary system, once a defendant has the assistance of counsel, the vast array of |n trial decisions, strategic and tactical, that must be made before and during trial rests with an accused and his attorney. The fact that a *71 particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La.App. 1st Cir.1993).
Accordingly, we affirm the defendant’s convictions and sentences, after likewise finding no merit in the second assignment of error.
CONVICTIONS AND SENTENCES AFFIRMED.
McCLENDON, J., concurs. I agree with the result reached by the majority.

. As noted by the defendant on appeal, while the State's motion in limine is included in the record, the record does not contain a copy of the defense motion in limine, although the State and the trial court conceded at the hearing that said motion was filed.

. Article 771 applies to comments by the judge, the district attorney, or a court official, when the remark is not within the scope of Article 770, or to remarks or comments made by any other witness or person, regardless of whether the remark or comment is within the scope of Article 770. See LSA-C.Cr.P. art. 771(2). Louisiana Code of Criminal Procedure article 770(2) provides that during trial or argument, when the judge, district attor *69 ney, or court official makes a direct or indirect reference to another crime committed or alleged to have been committed by the defendant, in the hearing of the jury, and the evidence is not admissible, a mistrial is warranted on motion of the defendant.

. The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., to receive such a hearing.