NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 0389

STATE OF LOUISIANA

VERSUS

KENYA AVANTI DESPENZA

*Judgment Rendered:*     FEB 1 9 2021

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 607736

The Honorable Vincent J. Lobello, Judge Presiding

* * * * * * * *

Bertha M. Hillman
Covington, Louisiana

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Matthew Caplan
Assistant District Attorneys
Covington, Louisiana

Counsel for Defendant/Appellant
Kenya Avanti Despenza

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**THERIOT, J.**

The defendant, Kenya Avanti Despenza, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1. She pled not guilty and not guilty by reason of insanity. Following a jury trial, she was found guilty as charged by unanimous verdict. She moved for a post-verdict judgment of acquittal and for a new trial, but the motions were denied. She was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. She now appeals, challenging the denial of her motion for a new trial. For the following reasons, we affirm the conviction and sentence.

## FACTS

On July 28, 2018, the defendant was living with the victim, Diane Bercy, her aunt, at the victim's duplex in Slidell. Sometime between that date and July 29, 2018, the defendant killed the victim by stabbing her fifty-six times. The victim suffered defensive wounds on her hands during the fatal attack.

After stabbing the victim, the defendant wrapped the victim's body in a comforter and other bedding and fled the scene in the victim's vehicle with the victim's wallet, purse, and checkbook. The defendant drove to church and then to the emergency room of University Medical Center. She claimed she had run out of her medications, was having hallucinations, and was there for the Ocean Task Force to build "Trump's wall damn [sic]." She was admitted to a psychiatric hospital, where she claimed she could hear angels talking, but "couldn't really make out what they were saying." The psychiatric hospital subsequently released the defendant to police custody after finding "with a high degree of medical certainty[,] [the defendant] is feigning or exaggerating signs and symptoms of mental illness to prevent incarceration."

2

At trial, Dr. Brannan Wiedemann was accepted as an expert in the field of forensic psychiatry. He was appointed to examine the defendant and provide his opinion as to whether or not she was insane at the time of the offense.

In regard to the stabbing of the victim, the defendant told Dr. Wiedemann that the victim was actually "Lionel," who had put her aunt's skin on him like a skin condom. The defendant claimed Lionel knew she had 4.2 million dollars because she was Beyoncé, and he managed her money. The defendant complained that Lionel "kept talking about how [the defendant] was overweight," and had "cut the lights off and the phone bill off during the day." The defendant claimed she rolled up the victim in a blanket because she wanted to take her to church and then to the hospital, but the victim was too heavy.

Dr. Wiedemann found the defendant had bipolar type 1 disorder with psychotic features per her history. He also found the defendant "demonstrated signs of [malingering]." He added:

> I am suspect or suspicious that [the bipolar disorder] could be substance induced, but all though [sic] [the defendant] may have that I don't feel that she was in the midst of a manic episode at the time, and I don't feel or believe that the evidence suggests that she wouldn't be able to tell right from wrong at the time of the crime.

In April of 2016, in an unrelated incident, the defendant stabbed her stepfather three times.

## MOTION FOR A NEW TRIAL

In her sole assignment of error, the defendant contends the trial court erred in denying her motion for a new trial. She claims the trial court erroneously overruled her objection to the playing of a redacted version of her statements against interest at trial. She also claims the trial court erroneously allowed the State to mischaracterize evidence at trial and to personally attack defense counsel during rebuttal. Lastly, the defendant argues La. C.Cr.P. art. 771 required an admonition following the challenged rebuttal.

3

## Playing of redacted jail calls

Pursuant to La. R.S. 15:450, "[e]very confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." **State v. Pierre**, 2012-0125 (La.App. 1 Cir. 9/21/12), 111 So.3d 64, 69, writ denied, 2012-2227 (La. 4/1/13), 110 So.3d 139.

At trial, the State indicated that although it would introduce the entirety of the "jail calls" into evidence, it only intended to publish portions of the jail calls to the jury. The State argued it should be able to publish what it deemed relevant evidence on direct examination, and the defense "would have the opportunity to publish [whatever] relevant evidence or the entirety of the jail call if necessary." The State indicated it was interested in publishing the portion of the jail calls between the defendant and her mother that "tend[ed] to negate the not guilty by reason of insanity defense[,]" rather than any discussions on the calls about recipes, making dinner, and letters the defendant was writing to her mother. The defense argued La. R.S. 15:450 and fundamental fairness required that the jail calls be played in their entirety "for the purposes of exculpation or context[.]"

The trial court noted that the statements against interest were not a confession or admission of guilt about the second degree murder of the victim, but rather concerned "something occurring afterwards regarding [the defendant's] plans of defense[.]" The court found that, in any event, placing the whole voice tape into evidence satisfied La. R.S. 15:450. The court further found the declaration against interest was only a small portion of the entire phone message, and the State would be required to "place in the whole declaration that's being made, not put out some, cut some out, the whole declaration needs to be played and anything regarding that has to be played." The court noted the defense would be able to play any additional portions of the jail calls.

4

The defense objected to the ruling of the court. The defense stated that rather than introduce entire calls on cross-examination of the custodian of records, it would like to publish the calls during its case-in-chief and "take the night to review things that we think are relevant and possibly play those tomorrow." The court agreed to the defense request. The next day, the defense played two of the jail calls previously only partially played by the State, in their entirety.

## Rebuttal

Closing arguments in criminal cases should be restricted to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. Further, the State's rebuttal shall be confined to answering the argument of the defendant. See La. C.Cr.P. art. 774. Prosecutors are allowed wide latitude in choosing closing argument tactics. The trial judge has broad discretion in controlling the scope of closing arguments, and this court will not reverse a conviction on the basis of improper closing argument unless thoroughly convinced that the remarks influenced the jury and contributed to the verdict. **State v. Vansant**, 2014-1705 (La.App. 1 Cir. 4/24/15), 170 So.3d 1059, 1063.

## Admonition

Louisiana Code of Criminal Procedure article 771 provides in pertinent part:

In the following cases, *upon the request of the defendant* ..., the court shall promptly admonish the jury to disregard a remark or comment made during the trial, . . . when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant . . . in the mind of the jury:

(1) When the remark or comment is made by . . . the district attorney ... , and the remark is not within the scope of Article 770; . . .

In such cases, *on motion of the defendant*, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

(Emphasis added).

Dr. Michelle Garriga, a forensic psychiatrist, was appointed by the trial court to evaluate the defendant for competency to stand trial and to evaluate her sanity at the time of the offense. The following colloquy occurred at trial:

[Defense]: And Doctor, you would definitely agree with me [the defendant] has an extensive history of psychiatric stays, correct?

[Dr. Garriga]: Yes. She has. Yes.

[Defense]: She has been prescribed multiple medications, correct?

[Dr. Garriga]: Correct.

[Defense]: For mania?

[Dr. Garriga]: Correct.

[Defense]: For psychotic episodes?

[Dr. Garriga]: Yes.

[Defense]: She is still on them now?

[Dr. Garriga]: I don't know if she is on them now.

[Defense]: She is on them as much as I believe.

[State]: Objection to testifying.

[Court]: You cannot testify. Strike that.

[Defense]: I apologize. Yes.

During rebuttal, the defense objected to the following argument by the State:

That is [the defendant] acting. That is her acting and she acted the same way last month with Dr. Wiedemann.

Defense wants to tell you that [the defendant] has been medicated and on all those antipsychotic medications and stuff, you did not hear any evidence that while [the defendant] has been in jail she has been on antipsychotic medication. The only person that you all heard that from was that defense attorney. That defense attorney when she told Dr. Garriga she was on medication because Dr. Garriga had no record that [the defendant] has been on antipsychotic medication. She stood right here and told Dr. Garriga, well she has been on medication and you heard us object because she cannot testify.

The defense argued the State was "attacking defense strategy." The State answered that the defense "just talked about how [the defendant] is on antipsychotic

6

medications and doing better, and I have the opportunity to say that we have heard no evidence that [the defendant] is on medication." The defense replied "[the defendant] does talk about it in the jail calls, which is evidence, State's evidence." The trial court ruled, "I am just going to tell the jury they have to go from their own memories." The State and the defense both agreed with the court's ruling.

Thereafter, the trial court instructed the jury, "I will just remind you as I did before, the closing arguments [whatever] either attorney has told you in closing is not evidence. You have to go from your own memory of what you heard about these issues."

Following trial, the defense moved for a new trial arguing that the trial court's rulings on edited statements against interest and improper statements during closing arguments constituted reversible error and entitled the defendant to a new trial. The court denied the motion without any additional reasons.

The motion for a new trial is based on the supposition that injustice has been done to the defendant, and, unless such injustice is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851(A). The court, on motion of the defendant, shall grant a new trial whenever the court's ruling on an objection made during the proceedings shows prejudicial error. See La.C.Cr.P. art. 851(B)(2). The denial of a motion for a new trial is not subject to appellate or supervisory review of the supreme court, except for error of law. See La.C.Cr.P. art. 858. Whether to grant or deny a motion for new trial rests within the sound discretion of the trial court, and that decision will not be disturbed on appeal absent a clear abuse of discretion. **State v. Eason**, 2019-0614 (La.App. 1 Cir. 12/27/19), 293 So.3d 61, 74-75.

We find no clear abuse of discretion in the denial of the motion for a new trial. The defendant failed to show injustice was done by the challenged trial court rulings.

7

The defendant was not deprived of "the benefit of any exculpation or explanation" from the playing of the entirety of her jail calls, under La. R.S. 15:450, because the State introduced the entirety of the calls into evidence, and the defense supplemented the limited publication of those calls by the State by playing any additional portions of the calls it wanted the jury to hear. See **State v. Duke**, 97-3059 (La. 10/30/98), 724 So.2d 730, 731 (per curiam) (recognizing that "[a]lthough opinions [differ] over the question of 'whether the *proponent* in the first instance *must* put in the whole' of a statement, there was 'and could be no difference of opinion as to the opponent's right, if a part only has been put in, himself *to put in the remainder.*'") (emphasis in original; citations omitted); see also **State v. Dabney**, 2015-0001 (La.App. 4 Cir. 9/9/15), 176 So.3d 515, 524-25, writ denied, 2015-1852 (La. 10/17/16), 208 So.3d 374 (referencing **Duke** to note, "[a]s the Louisiana Supreme Court observed, La. [R.S.] 15:450 reflects 'a rule of fairness observed in American jurisdictions' which, in turn, is derived from the 'common-law rule of completeness' wherein if one party offers a portion of a document, the other party should be allowed to 'put in the remainder.'").

The defendant claims the prosecutor's rebuttal was "patently false." The defendant argues evidence that she took prescribed medication was introduced through the jail phone calls, through the testimony of Drs. Garriga and Wiedemann, through her medical records, and through the sanity commission reports. The State answers that the point made in the challenged rebuttal was not that the defendant had *never* taken medication for psychotic episodes, but rather that she was not *currently* taking such medication.

The referenced "jail phone calls" consist of recorded phone conversations between the defendant and other family members on: August 22, 2018; September 4, 2018; September 6, 2018; September 11, 2018; September 12, 2018; May 30, 2019;

8

July 15, 2019 (two phone conversations); July 16, 2019; July 23, 2019; July 30, 2019; and September 9, 2019.

In the August 22, 2018 phone conversation, the defendant states she thinks "they" were going to take her back to the mental health hospital. She also indicates she is back on Celexa (a drug used to treat depression) and Seroquel (a drug used to treat certain mental/mood conditions). In the September 4, 2018 phone conversation, the defendant states she is "gonna sit up in here, take my mental health medicines, sleep, wake up, get fed until I go to the mental health place." She also states that she has to take medicine for the rest of her life because she has "antagonizing molestation grief," which "they" call "paranoid, schizophrenic delusional." In the September 6, 2018 phone conversation, after her mother states that "Dr. Phil" wants to interview her, the defendant comments that "bipolar is generational." In the September 11, 2018 phone conversation, the defendant states she cannot be around people who disrespect her. She claims, "I don't want nothing to aggravate my senses or my syndrome. It is very serious." In the September 12, 2018 phone conversation, the defendant tells her mother that the defendant has written a letter to the trial judge stating that the defendant and her mother suffer from mental illness and that she believes mental illness was "passed down" to her. She also states she will have to take medication for the rest of her life. In the July 16, 2019 phone conversation, the defendant states she went to the hospital in December, "but the medicine they gave [her] was not the right medicine." In the July 30, 2019 phone conversation, the defendant tells her father, "the medicine was wrong. When the medicine is right, [the defendant] doin fine, but when the medicine is wrong, she not." She also tells her father she has written a letter to the judge stating, "I am mentally ill. I might seem like because I have a little bit of education, that I'm not mentally ill, but I am, and it comes in episodes and I take medication for it. I've been taking the medication in the jailhouse."

Dr. Wiedemann evaluated the defendant on August 30, 2019. His evaluation included a review of the defendant's psychiatric history based on medical records from: February 23, 2005 to July 6, 2011; January 26, 2012; February 13, 2014 to January 21, 2016; March 11, 2016 to March 17, 2016; April 16, 2016 to April 20, 2016; October 10, 2016 to December 29, 2016; January 5, 2017 to February 19, 2018; July 29, 2018 to July 31, 2018; October 9, 2018 to January 18, 2019; and August 3, 2018 to April 9, 2019.

Those records indicated that the defendant was prescribed Seroquel, Haldol (a drug used to treat certain mental/mood disorders), Trileptal (a drug used to control seizures), Cogentin (a drug used to treat involuntary movements due to the side effects of certain psychiatric drugs) and Klonopin (a drug used to prevent and control seizures) between February 23, 2005 and July 6, 2011; Geodon (a drug used to treat schizophrenia), Seroquel and Celexa on January 26, 2012; Seroquel (for insomnia), Geodon (for mood stabilization), Cogentin and Celexa (for depression) between February 13, 2014 and January 21, 2016; Depakote (a drug used to treat the manic phase of bipolar disorder) between March 11, 2016 and March 17, 2016; Risperdal (a drug used to treat certain mental/mood disorders) between April 16, 2016 and April 20, 2016; Zyprexa (an antipsychotic drug) and Lithium (a drug used to treat bipolar disorder) between October 10 2016 and December 29, 2016; Zyprexa, Lithium, and Cogentin between January 5, 2017 and February 19, 2018; and Effexor (a drug used to treat depression), Zyprexa, and Celexa between August 3, 2018 and April 9, 2019.

The record also contains a report of a January 4, 2019 forensic competency evaluation of the defendant. The defendant's current medications are listed as Zyprexa and Lactulose (a laxative and ammonia reducer). The report indicates the defendant suffers from bipolar disorder with psychotic features.

The challenged rebuttal was neither an attack on defense strategy nor patently false. Defense counsel conceded at trial that, in regard to whether the defendant was

10

currently taking multiple medications for mania and psychotic episodes, she was in fact testifying when she stated "[the defendant] is on them as much as I believe." Further, to the extent that the recorded jail calls provided any evidence that the defendant was "currently taking" medication for mania and psychotic episodes, the latest of these calls was recorded approximately three months prior to the October 28, 2019 commencement of trial. Similarly, the defendant's medical records indicated she was taking antipsychotic medication approximately six months prior to trial, and the forensic competency evaluation indicated the defendant was taking antipsychotic medication approximately nine months prior to trial. Thus, the statement in rebuttal that "[t]he only person that [the jury] heard that from was that defense attorney" was not patently false.

Lastly, defense counsel failed to request an admonition. Indeed, following the objection to rebuttal, when the trial court stated, "I am just going to tell the jury they have to go from their own memories," defense counsel simply stated "[o]kay." Louisiana Code of Criminal Procedure article 771 mandates a request for an admonishment. Where defense counsel fails to request an admonition, any failure of the trial court to instruct the jury to disregard remarks or comments is not, in itself, reversible error. See **State v. Keaghey**, 2010-0989 (La.App. 1 Cir. 12/22/10), 2010 WL 5441998, *3, writ denied, 2011-0112 (La. 6/3/11), 63 So.3d 1008.

This assignment of error is without merit.

## DECREE

For the reasons set forth herein, defendant's conviction and sentence are affirmed. Costs of this appeal are assessed to the defendant, Kenya Avanti Despenza.

## CONVICTION AND SENTENCE AFFIRMED.

11